WAYNE BELOFF *v.* PROGRESSIVE CASUALTY
INSURANCE COMPANY
(12827)

PROGRESSIVE CASUALTY INSURANCE COMPANY *v.*
MARION LAWRENCE
DiGANGI, ADMINISTRATRIX
(ESTATE OF JAMES LAWRENCE), ET AL.
(12841)

WILLIAM L. VOGEL *v.* PROGRESSIVE CASUALTY
INSURANCE COMPANY
(12881)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 4, 1986—decision released March 31, 1987

*Jon S. Berk,* with whom, on the brief, was *Thomas P. Barrett,* for the appellant in the first two cases and the appellee in the third case (Progressive Casualty Insurance Company).

*David H. Herrmann,* for the appellee in the first case (plaintiff Wayne Beloff).

*Thomas B. Wilson,* with whom, on the brief, was *Kerin M. Woods,* for the appellee in the second case and the appellant in the third case (named defendant Marion Lawrence DiGangi, Administratrix, and plaintiff William L. Vogel).

SANTANIELLO, J. The dispositive issue in this consolidated appeal, is whether, at the relevant times, General Statutes §§ 38-175a through 38-175e[1] governed

---

[1] "[General Statutes (Rev. to 1983)] Sec. 38-175a. MINIMUM PROVISIONS IN AUTOMOBILE LIABILITY POLICIES. (a) The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger automobiles and commercial motor vehicles, as defined in subsection (7) of section 14-1, registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies, shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages and shall include a provision that the insurer shall, upon request of the named insured, issue or arrange for the issuance of a bond which shall not exceed the aggregate limit of bodily injury coverage for the purpose of obtaining release of an attachment.

"(b) The commissioner, before adopting such regulations or any subsequent modifications or amendments thereof, shall consult with insurers licensed to write automobile liability insurance in this state and other interested parties. Nothing contained in such regulations or in sections 38-175a to 38-175e, inclusive, shall prohibit any insurer from affording broader coverage under a policy of automobile liability insurance than that required by such regulations.

"[General Statutes (Rev. to 1983)] Sec. 38-175b. MINIMUM COVERAGES. (a) Every such policy shall provide insurance in accordance with such regulations against loss resulting from the liability imposed by law, with limits not less than those specified in subsection (a) of section 14-112, for damages because of bodily injury or death of any person and injury to or destruc-

motorcycle insurance policies so as to mandate that such policies provide uninsured and underinsured motorist coverage, and that disputes about coverage

tion of property arising out of the ownership, maintenance or use of a specific motor vehicle or motor vehicles within any state, territory, or possession of the United States of America or Canada.

"(b) Every such policy issued, renewed, amended or endorsed on or after April 8, 1974, shall provide that if the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state, territory or possession of the United States of America or any Province of Canada, require insurance with respect to the operation or use of the motor vehicle in such state, territory, possession or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of the motor vehicle in such state, territory, possession or province, provided the insurance under this subsection shall be reduced to the extent that there is other valid and collectible insurance under such policy or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same element of loss.

"[General Statutes (Rev. to 1983)] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles or of insured and underinsured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. Such arbitration proceeding shall be conducted by a single arbitrator.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recov-

issues arising out of such policies be submitted for final consideration to binding arbitration. We hold that there was no such mandate.

The underlying facts are not in dispute. In *Beloff* v. *Progressive Casualty Ins. Co.*, Docket No. 12827, Wayne Beloff was operating a motorcycle on October 26, 1982, when he was struck and seriously injured by another motor vehicle. At the time of the accident, Beloff lived at home with his mother, who had insured two motorcycles, including the one Beloff was riding, with Progressive Casualty Insurance Company (Progressive).

ery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of subsection (b) of this section.

"[General Statutes (Rev. to 1983)] Sec. 38-175d. POLICIES DEEMED TO PROVIDE COVERAGE IN ACCORDANCE WITH REGULATIONS. Policies affording bodily injury liability, property damage liability and uninsured motorist coverages to which the provisions of sections 38-175a to 38-175e, inclusive, apply shall be deemed to provide insurance under such coverages in accordance with such regulations. Policies affording medical payments coverage to which the provisions of said sections apply shall be deemed to provide insurance under such coverage in accordance with such regulations.

"[General Statutes (Rev. to 1983)] Sec. 38-175e. BINDERS. Any insurer authorized to issue an automobile liability insurance policy may, pending the issue of such a policy, make an agreement, to be known as a binder, or may, in lieu of such a policy, issue a renewal endorsement or evidence of renewal of an existing policy. The provisions of sections 38-175a to 38-175e, inclusive, shall apply to such binders, renewal endorsements or evidences of renewal."

We recognize that General Statutes §§ 38-175a through 38-175e have subsequently been amended. For the purpose of this appeal, however, the statutes as they existed at the times relevant to these actions govern our disposition of this appeal.

Upon settlement of the liability claim with the party responsible for the accident for his full policy limit of $20,000, Beloff sought to recover additional benefits from Progressive, claiming that he was entitled to underinsured motorist benefits under the two motorcycle policies. Each policy contained a provision for uninsured motorist coverage, conditioned on the payment of additional premiums.[2] Beloff's mother, however, had not paid for uninsured motorist protection. Progressive denied Beloff's claim and refused to submit the matter to arbitration.

Beloff brought an action seeking a declaratory judgment that General Statutes §§ 38-175a through 38-175e mandated that all insurance policies provide uninsured and underinsured motorist coverage, and that Progressive must submit all the coverage issues to arbitration. Both Beloff and Progressive filed motions for summary judgment. The trial court, *McDonald, J.,* reasoned that motorcycle insurance policies were required, as a matter of law, to provide uninsured and underinsured motorist coverage, and thus, there was no genuine issue of any material fact. Accordingly, the court granted Beloff's motion. After the court's decision, Beloff filed a motion to compel Progressive to submit to binding arbitration on all issues of coverage, liability and damages. The court granted this motion, and Progressive appealed.

In *Progressive Casualty Ins. Co.* v. *DiGangi,* Docket No. 12841, James Lawrence was killed on April 11, 1980, when his motorcycle collided with another vehicle. At the time of the accident, Lawrence possessed two insurance policies: an automobile policy issued by Criterion Insurance Company, which provided unin-

---

[2] The policies also contained provisions for binding arbitration of issues involving the insured's right to recover from third parties and the amount of that recovery.

sured motorist coverage in the amount of $20,000, and a motorcycle policy, which also provided for optional uninsured motorist benefits, issued by Progressive.[3] Lawrence had paid a premium for uninsured motorist benefits provided under the Progressive policy.

The operator of the other motor vehicle paid the Lawrence estate his policy limit of $20,000, and thereafter, Marion Lawrence DiGangi, as administratrix of the Lawrence estate, submitted a claim for underinsured motorist benefits under the two policies. Progressive refused the claim and filed an action for declaratory judgment to determine whether underinsured motorist benefits were afforded by its motorcycle policy with Lawrence, and, in the event coverage existed, to determine the order of priority between its policy and the automobile policy issued by Criterion Insurance Company.

DiGangi moved to dismiss the action claiming that, under General Statutes § 38-175c, the issues raised by Progressive's action had to be decided by arbitration. The trial court, *Vasington, J.,* granted DiGangi's motion and held that, because Progressive sought to resolve issues involving coverage and because Progressive's policy contained a binding arbitration clause, § 38-175c mandated that the parties arbitrate the dispute. Upon appeal, the Appellate Court sustained the trial court's determination, reasoning that Progressive sought to have the issue of coverage decided by the declaratory judgment, and that General Statutes § 38-175c clearly mandated that such issues be determined by arbitration.[4] *Progressive Casualty Ins. Co.* v.

[3] This policy also contained a provision for the arbitration of disputes concerning liability and damages. It did not, however, contain a provision for underinsured motorist coverage.

[4] The Appellate Court found no error in the trial court's ruling, although it upheld that court's dismissal on alternative grounds. *Progressive Casualty Ins. Co.* v. *DiGangi,* 4 Conn. App. 137, 138, 142, 492 A.2d 548 (1985).

*DiGangi,* 4 Conn. App. 137, 139, 492 A.2d 548 (1985). Upon the granting of certification, Progressive appealed to this court.

The third case consolidated on appeal, *Vogel* v. *Progressive Casualty Ins. Co.,* Docket No. 12881, involves a similar factual situation. William Vogel was insured under a motorcycle insurance policy issued by Progressive.[5] This policy contained a provision for uninsured motorist coverage for which Vogel paid an additional premium, and a binding arbitration provision for liability and damage disputes. The policy did not, however, contain a provision for underinsured motorist coverage.

On July 19, 1984, Vogel was seriously injured when the motorcycle he was operating was struck by another motor vehicle. Vogel collected the liability policy limit of $25,000 from the operator of the other motor vehicle and then submitted a claim for underinsured motorist benefits under the Progressive policy. Progressive denied the claim and Vogel filed a motion to compel arbitration of his claim. The trial court, *Berdon, J.,* dismissed Vogel's motion, holding that General Statutes § 38-175c, which mandates binding arbitration of automobile liability insurance policies, did not apply to this case because the insurance policy at issue was a motorcycle policy. Vogel appealed the trial court's determination. After the *Beloff* and *Vogel* appeals were transferred to this court, these appeals were consolidated pursuant to Practice Book § 3002 (now § 4004).

Beloff, DiGangi and Vogel (hereinafter insureds) now contend that General Statutes §§ 38-175a through 38-175e applied to Progressive's motorcycle insurance policies at the time of their respective accidents so as

---

[5] Vogel also had an automobile policy issued by the Hartford Casualty Insurance Company, which provided uninsured motorist coverage in the amount of $50,000.

to mandate the inclusion of uninsured and underinsured motorist coverage, and to mandate the submission of all coverage issues to arbitration. Progressive, on the other hand, argues that its motorcycle policies were not required to include such coverage, nor need it submit coverage issues to arbitration, because these sections did not then apply to motorcycle insurance policies. Thus, to resolve the issue before us, we must determine whether the legislature intended that General Statutes § 38-175a et seq. govern insurance policies covering motorcycles.

Before reaching the merits of this appeal, we must, as a preliminary matter, determine whether the question before us should be decided in arbitration proceedings or by this court. The insureds argue that the issue of whether §§ 38-175a through 38-175e govern motorcycle policies is a "coverage" issue, and as such, must be decided by arbitration as provided by General Statutes § 38-175c (a).[6] Since the basis for the duty to arbitrate relied upon by the insureds is § 38-175c (a), however, we must necessarily first determine whether it applies to motorcycle policies.

Recently, we have had the opportunity to examine the scope of § 38-175c (a). In *Security Ins. Co. of Hartford* v. *DeLaurentis,* 202 Conn. 178, 188, 520 A.2d 202 (1987), we held that the question of whether a policy's uninsured motorist coverage provision extended benefits to accidents involving underinsured motorists was a question of coverage to be determined by arbitration. In *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 623–24, 509 A.2d 467 (1986), we concluded that issues involving fleet stacking and workers' compensation setoffs also involved issues of coverage, and therefore

---

[6] General Statutes § 38-175c (a) provides, in pertinent part, that every automobile liability insurance policy containing a provision for binding arbitration "shall include a provision for final determination of insurance coverage in such arbitration proceeding."

were subject to determination by arbitration. See also *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 19–21, 453 A.2d 1158 (1983); *Oliva* v. *Aetna Casualty & Surety Co.,* 181 Conn. 37, 41–42, 434 A.2d 304 (1980).

This appeal is distinguishable from the cases cited in that here there is a dispute as to whether the dictates of § 38-175c (a) apply to the policies in question, not just a dispute over the scope of the coverage mandated by the section. Because the arbitrability of a dispute is ordinarily a legal question for the courts; *Frager* v. *Pennsylvania General Ins. Co.,* 155 Conn. 270, 274, 231 A.2d 531 (1967); we conclude that the preliminary determination of whether motorcycle policies are governed by §§ 38-175a through 38-175e is a question to be determined by this court, not an arbitrator. Cf. *Board of Education* v. *Frey,* 174 Conn 578, 580–81, 392 A.2d 466 (1978).

In construing § 38-175a, we must attempt to ascertain and give effect to the apparent intent of the legislature. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986); *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981); 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 45.05. "When the words of a statute are plain and unambiguous, we need look no further for interpretative guidance because we assume that the words themselves express the intention of the legislature. *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981). When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* [199 Conn. 667, 673, 509 A.2d 20 (1986)]; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368

(1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* supra, 522; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* supra.

An examination of the language of § 38-175a fails to reveal definitively the types of vehicles that it governed at the time the policies involved in these cases were in force. Section 38-175a provides, in relevant part, that the "regulations with respect to minimum provisions to be included in *automobile liability insurance policies . . . covering private passenger automobiles and commercial motor vehicles, as defined in subsection (7) of section 14-1 . . .* shall make mandatory the inclusion of . . . uninsured motorists coverages . . . ." (Emphasis added.) At first blush, the cross reference in § 38-175a itself would appear to resolve the issue before us. General Statutes § 14-1 (7),[7] however, defines only "commercial motor vehicle." It does not define "private passenger automobiles," nor is "private passenger automobiles" defined elsewhere in the statutes. It is therefore unclear from § 38-175a whether the legislature intended "automobile liability insurance policies . . . covering private passenger automobiles" to include coverage for motorcycles.

---

[7] "[General Statutes (Rev. to 1983)] Sec. 14-1. DEFINITIONS. . . . (7) 'Commercial motor vehicle' includes any vehicle designed or used for the transportation of merchandise or freight or employees of the registrant." Section 14-1 (7) is now § 14-1 (9).

The insureds urge us to look to statutes governing similar subject matter to help ascertain the legislative intent. They contend that General Statutes § 38-175f, regulating the cancellation of motor vehicle policies, adequately designates the types of vehicles covered by "automobile liability insurance policies," and that motorcycles are· so included.

General Statutes (Rev. to 1983) § 38-175f states that the vehicles covered by automobile liability insurance policies include "the following types only: (1) A motor vehicle of the private passenger or station wagon type that is not used as a public or livery conveyance for passengers, nor rented to others, or (2) any other four-wheel motor vehicle with a load capacity of fifteen hundred pounds or less which is not used in the occupation, profession or business of the insured . . . . " In light of this statute, the insureds argue that because a "passenger motor vehicle" is defined as a "motor vehicle which has the capacity of carrying not more than ten passengers"; General Statutes § 14-1 (35)[8]; and because a motorcycle is defined as a "motor vehicle having not more than three wheels"; General Statutes § 14-1 (25)[9]; therefore, motorcycles are "motor vehicle[s] of the private passenger . . . type"and accordingly are types of vehicles covered by "automobile liability insurance policies."

[8] "[General Statutes (Rev. to 1983)] Sec. 14-1. DEFINITIONS. . . . (35) 'Passenger motor vehicle' means a motor vehicle having a capacity of carrying not more than ten passengers, designed and used for the purpose of transporting persons with their necessary personal belongings." Section 14-1 (35) is now § 14-1 (40).

[9] "[General Statutes (Rev. to 1983)] Sec. 14-1. DEFINITIONS. . . . (25) 'Motorcycle' means a motor vehicle having not more than three wheels in contact with the ground and a saddle or seat on which the rider sits or a platform on which he stands, and with or without a side car, except any vehicle in which the driver's seat is completely or partially enclosed and the motor on such vehicle is not within such enclosed area, and shall include bicycles having a motor attached, except bicycles propelled by means of a helper motor as defined in section 14-286." Section 14-1 (25) is now § 14-1 (29).

While we recognize the principle that statutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law; *Heffernan* v. *Slapin*, 182 Conn. 40, 46, 438 A.2d 1 (1980); *State* v. *Giorgio*, 2 Conn. App. 204, 209, 477 A.2d 134 (1984); we find General Statutes § 38-175f of little help in interpreting § 38-175a. Section 38-175f, and more specifically the term "motor vehicle of the private passenger . . . type" as set forth in that section, is itself not free from ambiguity. Although § 14-1 (35) defines "passenger motor vehicle" as a motor vehicle which has the capacity to carry not more than 10 persons, "private passenger motor vehicle," virtually the same phrase used in the mandate of minimum coverage contained in § 38-175a, is defined differently elsewhere in the statutes.[10] Additionally, § 38-175f refers to the types of vehicles covered as a "motor vehicle of the private passenger or station wagon type . . . *or any other four-wheel motor vehicle*" implying that all vehicles referred to in § 38-175f must be four-wheel motor vehicles. (Emphasis added.) Therefore, it cannot be said that § 38-175f clearly indicates that motorcycles are "motor vehicle[s] of the private passenger . . . type" to be covered by "automobile liability insurance policies."

We find it significant that the insurance commissioner, in adopting regulations pursuant to § 38-175a, defined a " '[p]rivate passenger automobile' [to mean] the same as private passenger motor vehicle as defined

---

[10] "[General Statutes (Rev. to 1983)] Sec. 38-319. DEFINITIONS. . . . (g) 'Private passenger motor vehicle' means a: (1) Private passenger type automobile, (2) station wagon type automobile, (3) camper type motor vehicle, (4) high-mileage type motor vehicle as defined in . . . section 14-1, or (5) truck type motor vehicle with a load capacity of fifteen hundred pounds or less, registered as a passenger motor vehicle as defined in . . . section 14-1, or as a passenger and commercial motor vehicle as defined in . . . section 14-1, or used for farming purposes. It does not include a motorcycle or motor vehicle used as a public or livery conveyance."

in § 38-319 (g) of the general statutes." Regs., Conn. State Agencies § 38-175a-2 (4). General Statutes (Rev. to 1983) § 38-319 (g) defines a private passenger motor vehicle as "a: (1) Private passenger type automobile, (2) station wagon type automobile, (3) camper type motor vehicle, (4) high-mileage type motor vehicle as defined in . . . section 14-1, or (5) truck type motor vehicle with a load capacity of fifteen hundred pounds or less, registered as a passenger motor vehicle as defined in . . . section 14-1, or as a passenger and commercial motor vehicle as defined in . . . section 14-1, or used for farming purposes. *It does not include a motorcycle* or motor vehicle used as a public or livery conveyance." (Emphasis added.)

The insureds argue that the exclusion of motorcycles from § 38-319 (g) applies only to motorcycles used as a public or livery conveyance. We do not agree. In attempting to ascertain whether the legislature intended to exclude all motorcycles or just motorcycles used as a public or livery conveyance, we recognize that there is a presumption of purpose behind every sentence, clause or phrase, and that no word in a statute is to be treated as superfluous. *Peck* v. *Jacquemin,* supra, 60. Because a motorcycle is a motor vehicle, it would be redundant for the legislature to repeat the term "motorcycle," if it meant to exclude only those motorcycles used as public or livery conveyances.

Moreover, in construing a statute, common sense must be used and we must assume that the legislature intended to accomplish a reasonable and rational result. *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985). We would be hard pressed to envision a situation where a motorcycle would be used as a public or livery conveyance. Therefore, we conclude that the legislature intended to exclude all motorcycles from its definition of "private passenger motor vehicle" in § 38-319 (g).

Furthermore, as we have previously stated, when terms are ambiguous or have not been defined by this court or the legislature, the terms will be given their commonly approved meaning unless a contrary intent is clearly expressed. *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 550, 494 A.2d 564 (1985); *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 623, 440 A.2d 810 (1981) (*Armentano, J.,* dissenting); *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977); see General Statutes § 1-1 (a). "When a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries." *Hinchliffe* v. *American Motors Corporation,* supra; *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570–71, 440 A.2d 767 (1981); *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

The legislature chose to define the types of vehicles covered by "automobile liability insurance policies" as "private passenger automobiles." Webster's Third New International Dictionary defines "automobile" as a "*4-wheeled* automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal combustion engine using volatile fuel. . . ." (Emphasis added.) By contrast, "motorcycle" is defined as "a *2-wheeled* tandem automotive vehicle having 1 or 2 riding saddles and sometimes having a 3d wheel for the support of a sidecar." (Emphasis added.) Since the regulation passed pursuant to § 38-175a excludes motorcycles from the term "private passenger automobile" and because the common understanding of "automobile" does not encompass "motorcycle," we conclude that the statute's mandate of minimum provisions to be included in automobile liability policies covering "private passenger automobiles" did not apply to motorcycles.

Subsequent legislative action lends further support to our conclusion that the legislature did not intend to include motorcycle policies covering motorcycles within the ambit of "automobile liability insurance policies." In 1985, the General Assembly enacted Public Acts 1985, No. 85-12,[11] which amended § 38-175a as follows: "The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies . . . *covering* private passenger motor vehicles, as defined in subsection (g) of 38-319, commercial motor vehicles, as defined in subdivision (9) of section 14-1, motorcycles, as defined in subdivision (29) of section 14-1 . . . ." (Emphasis added.)

The insureds contend that No. 85-12 of the 1985 Public Acts only clarified the law as it then existed, and that the sole purpose behind the amendment was to

---

[11] Public Acts 1985, No. 85-12, provides: "An act concerning minimum provisions for motor vehicle liability policies.

"Subsection (a) of section 38-175a of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger [automobiles and] MOTOR VEHICLES, AS DEFINED IN SUBSECTION (g) OF SECTION 38-319, commercial motor vehicles, as defined in SUBDIVISION (9) OF section 14-1, MOTORCYCLES, AS DEFINED IN SUBDIVISION (29) OF SECTION 14-1, PUBLIC SERVICE MOTOR VEHICLES, AS DEFINED IN SUBDIVISION (44) OF SECTION 14-1, MOTOR VEHICLES IN LIVERY SERVICE, AS DEFINED IN SECTION 13b-101, AND VANPOOL VEHICLES, AS DEFINED IN SUBDIVISION (63) OF SECTION 14-1, registered or principally garaged in this state. Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies, shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages and shall include a provision that the insurer shall, upon request of the named insured, issue or arrange for the issuance of a bond which shall not exceed the aggregate limit of bodily injury coverage for the purpose of obtaining release of an attachment.

allow the insurance commissioner to provide minimum liability limits for the vehicles enumerated in the amendment. We do not agree with this interpretation.

Representative Morag L. Vance, in remarking on Public Acts 1985, No. 85-12, explained that "[t]his bill and its amendment is simply intended to give the insurance commissioner the ability to draft the amount of liability coverage that should be carried for the vehicles that are defined in the amendment. . . . What this [bill] does is it gives [the insurance commissioner] the *ability to also regulate these other areas.*" (Emphasis added.) 28 H.R. Proc., Pt. 5, 1985 Sess., pp. 1575–76.

The apparent purpose of No. 85-12 of the 1985 Public Acts was, therefore, to extend to the insurance commissioner the ability to authorize regulations, including the mandatory inclusion of uninsured motorists coverages, for motorcycle policies, where no such authority existed before. By so amending the statute, the legislature further mandated that such policies include underinsured motorist coverage and that policies providing for binding arbitration also provide for the final determination of coverage issues in the arbitration proceedings.

Contrary to the insureds' position, § 38-175a was not amended to clarify the types of vehicles "automobile liability insurance policies" covered. It is generally recognized that a statutory amendment is presumed to effect a change in the existing law; *Heffernan* v. *Slapin,* supra, 49; *Reitzer* v. *Board of Trustees of State Colleges,* 2 Conn. App. 196, 202–203, 477 A.2d 129 (1984); 1A J. Sutherland, supra, § 22.30; and that the legislature has not enacted futile or meaningless legislation. *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481 (1980). Section 38-175a was first enacted in 1967 and it provided that automobile liability policies covered private passenger automobiles. It was not until

1985 that the legislature undertook to expand the types of vehicles covered by "automobile liability insurance policies." There is nothing in the legislative history to demonstrate that the legislature intended this act to clarify the scope of § 38-175a. Cf. *State* v. *Blasko,* 202 Conn. 541, 556–58, 522 A.2d 753 (1987); 1A J. Sutherland, supra, § 22.31. It is apparent that the legislature intended not to clarify what type of vehicles had previously been covered by § 38-175a but to expand the statute to mandate that policies covering motorcycles provide uninsured and underinsured motorist coverage.

For the above reasons, we conclude that, at the times relevant to these cases, §§ 38-175a through 38-175e did not mandate that motorcycle policies provide uninsured and underinsured motorist coverage, nor did they mandate arbitration for coverage issues in motorcycle policies providing binding arbitration provisions.[12] Accordingly, we conclude that: (1) in *Beloff* v. *Progressive Casualty Ins. Co.,* the trial court erred in granting Beloff's motions for summary judgment and to compel arbitration; (2) in *Progressive Casualty Ins. Co.* v. *DiGangi,* the Appellate Court erred in affirming the trial court's decision granting DiGangi's motion to dismiss; and (3) in *Vogel* v. *Progressive Casualty Ins. Co.,* the trial court was correct in dismissing Vogel's application to compel arbitration.

---

[12] DiGangi and Vogel argue that even if General Statutes § 38-175a was not applicable to motorcycle insurance policies, Progressive is nonetheless obligated to pay underinsured motorist benefits, by virtue of General Statutes § 38-175c (b) (1), which provides: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage."

Because we find that motorcycle policies were not governed by General Statutes §§ 38-175a through 38-175e, we find that the mandates of § 38-175c (b) (1) are inapplicable to this case.

In *Beloff,* the judgment is set aside and the trial court is directed to render judgment for Progressive on Progressive's motion for summary judgment; in *DiGangi,* the Appellate Court's decision is reversed and that court is ordered to direct the trial court to render judgment on Progressive's complaint in accordance with this opinion; and in *Vogel,* the trial court's judgment is affirmed.

In this opinion the other justices concurred.