HENRY ZACHS *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES
(13317)

PETERS, C. J., SHEA, CALLAHAN, GLASS and SANTANIELLO, Js.

Argued March 3—decision released June 7, 1988

*Edward T. Blair,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*F. Gina Gelb,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue raised by this appeal is whether the one-way radio paging services operated by the plaintiff, Henry Zachs, doing business as Massachusetts Connecticut Mobile Telephone Company, are "telephone answering services" within the meaning of General Statutes § 12-407 (2) (i) (G), and thus, subject to Connecticut sales and use tax.[1] We find that they are not and, therefore, affirm the judgment of the trial court rendered in favor of the plaintiff.

The relevant facts are not in dispute. In 1975, the Connecticut legislature passed Public Acts 1975, No. 75-213, §§ 15 through 22, and 53, which amended General Statutes § 12-407 regarding the applicability of the state sales and use tax provisions. Prior to July 1, 1975, § 12-407 (2) (i) imposed, in pertinent parts, a sales tax

---

[1] General Statutes § 12-407 (2) (i) (G) provides: " 'Sale' and 'selling' mean and include . . . the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . telephone answering services . . . ."

upon the sale of "telephone . . . services."[2] Public Acts 1975, No. 75-213, § 15, revised § 12-407 (2) (i) by, inter alia, deleting "telephone . . . services" and imposing a sales tax upon "telephone answering services."[3] Initially, this change became codified in § 12-407 (2) (j) (I)[4] and thereafter was recodified in § 12-407 (2) (i) (G).

Since 1961, the plaintiff has been engaged in various aspects of the telecommunications industry in New England, and has operated a telephone answering service, a cellular telephone business and a mobile radio telephone business. In 1970, he began a one-way pager or beeper service in Connecticut under the business name of Massachusetts Connecticut Mobile Telephone Company. In recognition of the enactment of Public Acts 1975, No. 75-213, § 15, the plaintiff's attorney forwarded a letter dated July 1, 1975, to Terrance O'Neill of the state tax department. The letter summarized the essential aspects of the plaintiff's portable radio telephone and radio paging businesses. In his letter, the plaintiff's attorney sought guidance with regard to the tax ramifications of the new amendment and posited the following question to the tax department: "[D]oes [Public Acts 1975, No. 75-213,] § 15 (K), which taxes the

---

[2] General Statutes (Rev. to 1975) § 12-407 (2) (i) provides: " 'Sale' and 'selling' mean and include . . . the sale, furnishing, or service of telephone, telegraph, community antenna television and cable services and the sale of water, gas, electricity, steam, coolants and atomic power, but not including the sale of any fuel for use as domestic heating fuel."

[3] General Statutes (Rev. to 1975) § 12-407 (2), as amended by Public Acts 1975, No. 75-213, § 15, provides in pertinent part: " 'Sell' and 'selling' mean and include . . . (j) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (I) telephone answering services . . . ."

[4] Public Acts 1977, Nos. 77-370, § 1, and 77-604, § 76, deleted subdivision (j) from General Statutes (Rev. to 1977) § 12-407 (2) and added subdivisions (i) (A) through (M) under General Statutes (Rev. to 1979) § 12-407 (2). Thus, General Statutes (Rev. to 1977) § 12-407 (2) (j) (I) now appears as § 12-407 (2) (i) (G).

leasing or rental of tangible personal property, apply to the furnishing of a service under F.C.C. tariff and regulation?"[5] Tax Commissioner Gerald J. Heffernan responded by letter dated November 21, 1975, in which he stated: "This will acknowledge receipt of your inquiry pertaining to the taxability of the equipment rented or leased by your clients to their customers. The department has reviewed the facts of this case and it is the determination of the department that your clients are in the business of renting or leasing tangible personal property. The rental income is subject to the tax pursuant to Public Act 75-213." Pursuant to the commissioner's letter, the plaintiff began collecting sales tax on the rental and sales of the paging or beeper equipment and the mobile radio telephone equipment. The plaintiff, however, did not charge or collect sales taxes on the monthly service charges paid by the subscribers of these services, apparently because the defendant's letter was silent on this issue.

In 1985, a revenue examiner from the Connecticut department of revenue services conducted a general audit of the plaintiff's books for the period of January 1, 1982, through December 31, 1984.[6] The examiner concluded that the revenues received by the plaintiff from the service charges for the paging or beeper services were subject to sales tax under § 12-407, as amended by Public Acts 75-213, § 15, and assessed the plaintiff back taxes in the amount of $354,557.90, exclusive of interest. Thereafter, the plaintiff petitioned for a reas-

[5] The various businesses operated by the plaintiff are separate legal entities that operate under different business names. They are all licensed and regulated by the Federal Communications Commission, and none of them is regulated by the department of public utility control for the state of Connecticut.

[6] General Statutes § 12-415 (7) limits a deficiency assessment period to three years from the period for which the tax was to be assessed or three years from the date the return was filed.

sessment, pursuant to General Statutes § 12-418 (1);[7] the tax commissioner affirmed the examiner's assessment in full with interest. The tax commissioner based his decision, at least in part, upon § 12-426-27 (b) (8)[8] of the Regulations of Connecticut State Agencies which defines "telephone answering services" to include the "transmitting of telephone messages to the clients of those engaged in the business of providing such services."

Thereafter the plaintiff filed this appeal to the Superior Court pursuant to General Statutes § 12-422.[9] The

---

[7] "[General Statutes] Sec. 12-418. REASSESSMENTS. (1) Petition for reassessment. Any person against whom an assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within thirty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the thirty-day period, the assessment becomes final at the expiration of the period."

[8] Section 12-426-27 (a) and (b) (8) of the Regulations of Connecticut State Agencies (Rev. to 1985) provides: "ENUMERATED SERVICES.

"(a) The rendering of the following enumerated services for a consideration, defined in subsection (b) of this regulation, in this state on or after July 1, 1975, shall be a sale and subject to the sales tax. Any person or entity rendering such services must register with the Commissioner of Revenue Services and must collect the tax due thereon from the purchaser. Such retailers shall pay the taxes so collected in the manner and form as other retailers licensed as such to sell tangible personal property in this state. A purchaser may issue a resale certificate only in those instances where said services are being resold without change.

"(b) Enumerated services. . . .

"(8) Telephone answering services.

"Such services include transmitting of telephone messages to the clients of those engaged in the business of providing such services."

[9] General Statutes § 12-422 provides: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil

trial court, *Maloney, J.,* sustained the plaintiff's appeal and found: "(1) that the plaintiff's beeper paging system is not a 'telephone answering service' within the commonly approved usage of that term; (2) that the defendant commissioner's interpretation of the law and regulations to the contrary in this case is inconsistent with his past practice; and (3) the legislature has not considered the paging system as taxable under the sales tax law . . . [and] that the plaintiff's beeper paging system is not a 'telephone answering service' as that term is used in General Statutes Sec. 12-407 (2) (i) (G)." Thereafter, judgment was rendered in favor of the plaintiff. The defendant, John G. Groppo, commissioner of revenue services, filed this appeal to the Appellate Court, which was transferred to this court pursuant to Practice Book § 4023.

The principal issue raised on appeal involves the interpretation of the phrase "telephone answering services" as now contained within § 12-407 (2) (i) (G). The defendant argues that the wording of § 12-407 (2) (i) (G) is clear and unambiguous, and that, by ascribing the common, everyday meaning to the term "telephone answering services," the one-way paging services provided by the plaintiff are clearly subject to the sales tax levied by General Statutes § 12-408 (1). The defendant also asserts that § 12-426-27 (a) and (b) (8) of the Regula-

action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

tions of Connecticut State Agencies support his position that the trial court erred in concluding that the service provided by the plaintiff to its subscribers "falls short of the 'conventional telephone answering service.' " We disagree.

The trial court, in reaching its decision, properly conducted a de novo review of the defendant's appeal which was filed pursuant to General Statutes § 12-422. See *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 144–45, 527 A.2d 679 (1987). " ' "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4061]." ' " Id., 153. In this appeal, the defendant is challenging the trial court's construction of § 12-407 (2) (i) (G) which involves a question of law. Therefore, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. Id.; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

At the outset, we note that taxing statutes are to be strictly construed; *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 421, 503 A.2d 582 (1986); *Naylor* v. *Brown,* 166 Conn. 581, 587, 353 A.2d 709 (1974); and statutory ambiguities in the imposition of such taxes must be resolved in favor of the taxpayer and against the taxing authority.[10] *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 588–89, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521

---

[10] Although not applicable here, tax statutes that grant an exemption to which the taxpayer claims an entitlement must be strictly construed against the taxpayer and in favor of the taxing authority. *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 421, 503 A.2d 582 (1986); *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981).

A.2d 569 (1987). In addition, courts must construe statutory provisions as they are written; *Orticelli* v. *Powers,* 197 Conn. 9, 13–14, 495 A.2d 1023 (1985); *McDonald* v. *Haynes Medical Laboratory, Inc.,* 192 Conn. 327, 334, 471 A.2d 646 (1984); and in a manner so as to give effect to the apparent intent of the legislature. *State* v. *White,* 204 Conn. 410, 421, 528 A.2d 811·(1987); *Beloff* v. *Progressive Casualty Ins. Co.,* 203 Conn. 45, 54, 523 A.2d 477 (1987). If, however, the wording of the statute is unclear, the legislative intent must be ascertained by examining the language of the statute, its legislative history and the purpose the statute is to serve. *State* v. *Dolphin,* 203 Conn. 506, 521, 525 A.2d 509 (1987); *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986).

The defendant argues that under the plain and ordinary understanding of a telephone answering service, common sense dictates that one-way paging or beeper services should be included within the meaning of "telephone answering services." We disagree.

In order to address this claim specifically, an understanding of the plaintiff's paging or beeper services is required. A subscriber to the plaintiff's services is assigned a telephone number. One wishing to contact the subscriber dials this number on an ordinary telephone. The transmission is sent to the telephone company by wire, and telephone company equipment in turn relays the transmission by wire to a computerized switching terminal at the plaintiff's office. The switching terminal automatically and electronically relays the signal, either by radio wave or by wire, to a transmitter located on a mountain top. From there the transmitter sends out a radio signal to the paging units carried by the subscribers. The pager, which is tuned in to a special radio frequency, is activated by the transmitted radio waves.

The plaintiff offers three types of pagers.[11] The first is a tone-only pager. When activated, it emits a beeping sound. The tone-only pager can be programmed to emit a limited number of sequence beeps to indicate to the subscriber the identity of the caller, e.g., one beep for the subscriber's home, two beeps for subscriber's office, etc. The second is a digital display paging unit. When activated, it will digitally display up to twenty-three characters representing the telephone number of the caller. The third pager is a tone and voice unit. When activated, it emits a beep followed by a voice message from the caller. All three units are one-way communications devices. The subscriber cannot use the pager or beeper units to respond to the caller; rather he or she must go to a separate telephone to contact the caller.

At oral argument before this court, the defendant argued that the computerized switching terminal's response to the caller's transmission, coupled with its subsequent relay of the signal or message to the subscriber's pager unit, is clearly an "answer." Therefore, the defendant argues that the one-way paging services provided by the plaintiff are "telephone answering services" under the ordinary and everyday meaning of the term. We are unpersuaded.

Webster's Ninth New Collegiate Dictionary defines "answering service" to mean "a commercial service that answers telephone calls for its clients." While the plaintiff's paging or beeper services are commercial services, they do not answer telephone calls for their subscribers. Rather, they merely electronically and automatically relay the transmission to the subscriber in the same way in which the telephone company relays

---

[11] At oral argument, the defendant's attorney conceded that the commissioner makes no distinctions between the three types of paging units. All three are treated the same for the purpose of determining sales tax liability.

the caller's signal to the plaintiff's switching terminal. The caller does not even know if his call was received, let alone answered, if the subscriber has turned off his paging unit, is not carrying it or chooses not to respond. Further, unlike the answering service business also operated by the plaintiff that utilizes operators and telephone lines only,[12] when a pager is activated, the subscriber responds to the caller directly and need not first call the plaintiff's office to retrieve the caller's identity, phone number or message. The caller's telephone call is, therefore, not "answered" until the subscriber, through his own devices, makes contact with the caller. Accordingly, we find that the radio paging or beeper services provided by the plaintiff are not, in the ordinary understanding of the term, "telephone answering services."

Even if the language of the statute were unclear, the state's expansive construction cannot be reconciled with the statute's legislative history. Prior to the adoption of No. 75-213, § 15, of the 1975 Public Acts, General Statutes §§ 12-407 (2) (i) and 12-408 (1) imposed a sales tax on, inter alia, "the sale, furnishing or service of telephone . . . services" *generally*. In 1975, § 12-407 (2) (i) was significantly changed by Public Acts 1975, No. 75-213, § 15. Section 15 added to § 12-407 (2) subdivisions (j) (A) through (M), to which subdivisions added an enumerated list of thirteen services that the sales tax imposed by § 12-408 (1) would apply. In such

---

[12] The telephone answering service operated by the plaintiff is a separate legal entity and is conducted under the name "Message Center, Incorporated." Under this service, a telephone line is run from the subscriber's telephone to the plaintiff's switchboard. When one calls the subscriber, the plaintiff's switchboard rings simultaneously with the subscriber's phone. If the subscriber does not answer his phone within a certain number of rings, the operator manning the plaintiff's switchboard manually answers the call and writes down a message for the subscriber. Later, the subscriber is either called by the operator or he himself calls into the switchboard for his messages. The plaintiff has always charged and collected sales taxes in connection with the monthly service charges to subscribers.

a case, " ' "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive." ' (Citations omitted.) *State* v. *Kish,* 186 Conn. 757, 766, 443 A.2d 1274 (1982)." *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985). There can be no doubt that the legislature intended to expand the application of the sales tax but only to those services specified therein. See 18 H.R. Proc., Pt. 7, 1975 Sess., p. 3031. This court is not at liberty to expand the list by an expansive construction of the specific services enumerated.

A careful reading of § 12-407 (2) (j), as amended by § 15 of No. 75-213 of the 1975 Public Acts, reveals no indication that the legislature intended one-way radio paging or beeper services to be included in the list of enumerated services or to be read into the list through an expanded interpretation of the term "telephone answering services." In fact, the wording of § 15 indicates the contrary. While § 15 expanded the scope of the sales tax to the various services enumerated, it also significantly limited the application of the sales tax to telecommunications by substituting the term "telephone answering services" for "telephone . . . services" generally. This amendment also deleted references to the following telecommunications[13] services that were specifically subject to the sales tax in the pre-1975 version of § 12-407 (2) (i) (G): "telephone, telegraph, community antenna television and cable services." Accordingly, we can find no evidence in the wording of § 12-407 (2) (i) (G) to indicate that the legislature intended the revenues derived from the monthly service charges on one-way radio paging or beeper services to be subject to sales tax as a "telephone answering service."

---

[13] Webster's Third New International Dictionary defines "telecommunication" as "communication at a distance (as by cable, radio, telegraph, telephone, or television)."

This conclusion is further supported by the subsequent adoption of Public Acts 1986, No. 86-410, which totally revamped chapter 211, entitled "Regulated Telecommunications Service, Express, Telegraph, Cable And Community Antenna Television System Companies Tax," and added chapter 210a, entitled "Telecommunications Service Company Tax," both under title 12 of the General Statutes. In adopting No. 86-410 of the 1986 Public Acts, the legislature recognized the modern technological advances in telecommunications, the divestiture of American Telegraph and Telephone Company (AT&T), and the entry of new competition into the telecommunications field. See 29 H.R. Proc., Pt. 6, 1986 Sess., p. 2077. The legislature also recognized that the old tax laws that spoke in terms of wires, poles and the like were outdated. Therefore, the legislature enacted No. 86-410 of the 1986 Public Acts with the intent to redefine telecommunication services in modern terminology; 29 H.R. Proc., Pt. 6, 1986 Sess., p. 2088; and "to address the new unregulated competitive and *previously undefined services.*" (Emphasis added.) Remarks of Senator James H. McLaughlin, 29 S. Proc., Pt. 6, 1986 Sess., p. 1938.

Chapter 210a imposes a gross receipts tax and chapter 211 imposes alternatively a gross earnings tax upon companies engaged in rendering *any* telecommunications service for consideration within Connecticut. See General Statutes §§ 12-255b (a)[14] and

[14] General Statutes § 12-255b (a) provides: "TAX ON GROSS RECEIPTS FROM RENDERING TELECOMMUNICATIONS SERVICE NOT SUBJECT TO RATE REGULATION OR IN MARKETS WHERE COMPETITION IS NOT PROHIBITED. APPORTIONMENT OF GROSS RECEIPTS. DEDUCTION FOR ACCESS CHARGES. (a) Any company engaged in rendering for consideration any telecommunications service not subject to rate regulation by the Connecticut department of public utility control or if subject to such rate regulation, engaged in rendering such service in markets in which competition with respect to such service is not prohibited by law shall, for the privilege of rendering such service in this state, be subject to a tax imposed on such company at the

12-256.[15] Both chapters specifically define telecommunications service to include, inter alia, "cellular mobile

rate of six and one-half per cent of the gross receipts of such company, subject to any deduction to which such company may be entitled under subsection (b) of this section, attributable to charges for the rendering of any such service which is: (1) rendered in its entirety within this state, (2) originated in this state and terminated in another state and with respect to which such service is charged to a telephone number, customer or account located in this state from which such service originated, or to the account of any transmission instrument in this state from which such service originated or (3) originated in another state and terminated in this state and with respect to which such service is charged to a telephone number, customer or account located in this state at which such service is terminated, or to the account of any transmission instrument in this state at which such service is terminated."

[15] General Statutes § 12-256 provides: "ANNUAL TAX ON GROSS EARNINGS OF EACH COMPANY RENDERING REGULATED TELECOMMUNICATIONS SERVICE OR CONDUCTING AN EXPRESS, TELEGRAPH OR CABLE BUSINESS OR OPERATING A COMMUNITY ANTENNA TELEVISION SYSTEM. Each company engaged in rendering telecommunications service, as defined in section 12-256a, for consideration in markets subject to rate regulation by the department of public utility control and in markets in which competition is prohibited by law, such service hereinafter in this chapter referred to as 'regulated telecommunications service,' each express company carrying on an express business on railroads, each company conducting a telegraph or cable business and each person, association or corporation operating a community antenna television system under chapter 289, shall pay an annual tax upon the gross earnings from (1) regulated telecommunications service in this state in the case of any company rendering such service, any subscriber line charge or charges as required by the Federal Communications Commission and any access charges, as defined in subsection (e) of section 12-256a, collected by such company, (2) the lines in this state in the case of any company conducting a telegraph or cable business, provided in the case of a company conducting a telegraph business the tax imposed under this section shall only be applicable with respect to a company conducting such business, and the services offered by such company, subject to tax under this section on January 1, 1986, (3) the routes in this state in the case of any company carrying on such an express business and (4) in the case of community antenna television systems, lines and auxiliary equipment operated by it in this state. No deduction shall be allowed from such gross earnings from operations for commissions, rebates or other payments, except such refunds as arise from errors or overcharges. Each such company shall, on or before April first, annually, render to the commissioner of revenue services, under oath of its treasurer, or the person performing the duties of treasurer, or of an authorized agent or offi-

telephone or telecommunication service, *specialized mobile radio and pagers and paging service,* including any form of mobile two-way communication." (Emphasis added.) General Statutes §§ 12-255a (a) and 12-256a (a). Each chapter also specifically exempts from the definition of "telecommunications service" those services or transactions enumerated in § 12-407 (2) that were already subject to the sales and use tax under § 12-408. See General Statutes §§ 12-255a and 12-256a (a) (2). In enacting No. 86-410 of the 1986 Public Acts, the legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of laws. *State* v. *Harris,* 198 Conn. 158, 168, 502 A.2d 880 (1985); *Warner* v. *Leslie-Elliott Constructors, Inc.,* 194 Conn. 129, 134, 479 A.2d 231 (1984). Therefore, at the time No. 86-410 was passed, it was clear that the legislature itself did not consider radio paging or beeper services to be encompassed within the enumerated list of services set forth in § 12-407 (2) (j) (A) through (M). Accordingly, we conclude that the trial court did not err in finding that the term "telephone answering service" was not intended to encompass the paging or beeper services of the plaintiff.

cer, a return on forms prescribed or furnished by the commissioner specifying: The name and location within this state of such company or, if it has no location within this state, where such company is located; the total amount of gross earnings from regulated telecommunications service and access charges, lines, routes, and for community antenna television systems, lines and auxiliary equipment operated by it, for the year ending the thirty-first day of December next preceding or for each lesser period of consecutive time during such year, each such year or period being in this chapter and chapters 212 and 212a called a 'tax year', in which business or operations were carried on in this state; the total miles of railway routes which each of the companies doing an express business was entitled to operate under contracts with railroad companies and the number of miles of such railway routes within this state on the first day and on the last day of the tax year; the total miles of wires operated by each of the telegraph or cable companies and community antenna television systems and the total miles of such wires operated within this state on the first day and on the last day of the tax year."

The defendant finally argues that § 12-426-27 (b) (8) of the Regulations of Connecticut State Agencies clarifies and broadens the meaning of "telephone answering services" "by expressly providing that the transmittal of a telephone message is included in that definition." Section 12-426-27 (b) (8) includes within the ambit of "telephone answering services" the "transmitting of telephone messages to the clients of those engaged in the business of providing such services." This regulation would only govern this case if we were to conclude that the electronic relay of a caller's signal by the plaintiff's electronic switching terminal constitutes the transmission of a "telephone message."[16] Just as we have determined that one-way paging or beeper services are not "telephone answering services," so it is our conclusion that they do not fall within the ordinary understanding of a "transmission" of a "telephone message." The regulations are therefore of no avail to the defendant's argument in the circumstances of this case. Accordingly, the trial court did not err in rendering judgment for the plaintiff.[17]

There is no error.

In this opinion the other justices concurred.

[16] We note that one-way radio paging or beeper services which electronically relay or broadcast a radio signal from its own transmitters to a subscriber's pager have specifically been held not to be engaged in the transmission of "telephone messages" or to be a "telephone service" despite being interconnected to land-line telephone facilities. See *Illinois Consolidated Telephone Co.* v. *Illinois Commerce Commission,* 95 Ill. 2d 142, 147–48, 447 N.E.2d 295 (1983); *Radio Relay Corporation* v. *Public Utilities Commission,* 45 Ohio St. 2d 121, 129-30, 341 N.E.2d 826 (1976).

[17] In its counterstatement of issues, the plaintiff claims that the trial court erred in concluding that the defendant was not estopped from collecting the sales tax on the one-way paging system. This claim arises out of the defendant's silence, in its reply letter dated November 21, 1975, with regard to the applicability of the sales tax to the plaintiff's monthly service charges on the beeper or paging service under the changes made by No. 75-213 of the 1975 Public Acts. In light of our holding above, we need not address this claim.