WHITE OAK CORPORATION *v.* DEPARTMENT OF
REVENUE SERVICES
(12551)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued November 12, 1985—decision released January 21, 1986

*Richard K. Greenberg,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert L. Klein,* assistant attorney general, for the appellant (defendant).

*David J. Heinlein,* with whom, on the brief, was *Yolanda Sefcik,* for the appellee (plaintiff).

CALLAHAN, J. The defendant, the department of revenue services, has appealed from a judgment rendered

in favor of the plaintiff White Oak Corporation, a highway construction contractor. The sole issue on appeal is whether the Appellate Court erred when it sustained the judgment of the trial court which held that the plaintiff was not liable for the sales and use tax assessed by the defendant on certain services and rentals. That decision was based on a conclusion that the services and rentals in question were resold to the state and therefore exempt from the Connecticut sales and use tax. *White Oak Corporation* v. *Department of Revenue Services*, 2 Conn. App. 165, 166, 476 A.2d 639 (1984); see General Statutes §§ 12-411 (9), (10), (12), 12-410 (1), (2), (4). We find error.

The parties have stipulated to the following facts: From March 1, 1976, through February 28, 1979, the plaintiff contracted with the state department of transportation (hereinafter DOT) to construct various highways and bridges. Under the terms of each of the contracts, the plaintiff was obligated to provide watchmen, trafficmen and flagmen at such locations and for such periods as ordered by the state engineer, who was an employee of the DOT. The plaintiff, pursuant to these contracts, purchased the services of watchmen, trafficmen and flagmen from various private agencies and police departments, for which it paid a total of $280,020.13. When it purchased these services it issued resale certificates to the private agencies and the police departments. The DOT paid the plaintiff $272,468.58 for these services, an amount in accord with the schedule of prices provided in each contract. Also pursuant to its various contractual obligations, the plaintiff rented highway flashers for a total of $27,383.17, for which it issued resale certificates. In accordance with contract provisions, the DOT paid the plaintiff $21,355.50 for these rentals. The issuance of a resale certificate by the plaintiff relieved its suppliers of liability for the sales and use tax and imposed liability for

the tax on the plaintiff only if it made use of the service or property. General Statutes §§ 12-411 (9), (10), (12), 12-410 (1), (2), (4).

The defendant assessed a tax deficiency of $13,735.11 on the plaintiff based on the purchase price of the services of the watchmen, trafficmen and flagmen and on the rental price of the highway flashers. The plaintiff petitioned for an oral hearing under General Statutes (Rev. to 1979) § 12-418 (2).[1] On February 25, 1980, a conference was held relative to the plaintiff's petition for a reassessment of the sales and use tax deficiency. On March 11, 1980, the defendant confirmed its assessment for the following reasons: "The services of watch-

---

[1] "[General Statutes (Rev. to 1979)] Sec. 12-418. REASSESSMENTS. (1) PETITION FOR REASSESSMENT. Any person against whom an assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within thirty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the thirty-day period, the assessment becomes final at the expiration of the period.

"(2) ORAL HEARING. If a petition for reassessment is filed within the thirty-day period, the commissioner shall reconsider the assessment and, if the person has so requested in his petition, shall, in his discretion, grant the person an oral hearing and shall give him ten days notice of the time and place of the hearing. The commissioner may continue the hearing from time to time, as may be necessary, and may assign the conduct of such hearing to his representative.

"(3) DECREASE OR INCREASE OF ASSESSMENT. The commissioner may decrease or increase the amount of the assessment before it becomes final, but the amount may be increased only if a claim for the increase is asserted by the commissioner at or before the hearing.

"(4) FINALITY DATE OF ORDER OR DECISION. The order or decision of the commissioner upon a petition for reassessment becomes final thirty days after service upon the petitioner of notice thereof.

"(5) DUE DATE OF ASSESSMENT; PENALTY. All assessments made by the commissioner under sections 12-415 and 12-416 are due and payable at the time they become final. If they are not paid when due and payable, a penalty of ten per cent of the amount of the assessment, exclusive of interest and penalties, shall be added thereto.

"(6) SERVICE OF NOTICE. Any notice required by this section shall be served personally or by mail in the manner prescribed for service of notice of a deficiency assessment."

men service, trafficmen and flagmen are taxable in full. The services are rendered in performance of the contract provision and do not constitute a resale of [sic] a governmental agency. . . . The tax on the rental of the flasher [sic] was properly assessed. The transaction does not constitute a resale to a governmental agency.''

Pursuant to General Statutes § 12-422,[2] the plaintiff appealed the defendant's assessment of a tax deficiency to the Superior Court. The parties submitted a stipulation of facts to *Hon. Howard W. Alcorn,* state trial referee, acting as a trial court, who rendered judgment for the plaintiff. *White Oak Corporation* v. *Department of Revenue Services,* 39 Conn. Sup. 234, 475 A.2d 343 (1982). He concluded that "the plaintiff's purchase of the services of watchmen and traffic officers and the rental of lighting equipment was not a 'use' of those items by the plaintiff but rather it was a sale of those

---

[2] "[General Statutes] Sec. 12-422. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

items to the state, a tax exempt agency. General Statutes § 12-421 (a). Consequently, the plaintiff is not liable for a sales and use tax on those items." Id., 239. The defendant then appealed to the Appellate Court. In a per curiam opinion the Appellate Court, relying upon the opinion of the trial court, found that there was no error committed below. *White Oak Corporation* v. *Department of Revenue Services,* 2 Conn. App. 165, 476 A.2d 639 (1984).

We therefore must decide whether the Appellate Court was correct when it upheld the decision of the trial court. That court identified the issue before it to be "whether the trial court erred in finding that the services in question and the rental of equipment were resold to the state and were therefore exempt from the use tax." Id., 166. In an appeal, after certification from the judgment of the Appellate Court, "the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo." *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985). We will only consider those issues which have been raised by the petition for certification. In the present case, therefore, we need to determine only whether the Appellate Court erred in upholding the decision of the trial court that the services and rentals in question were sold by the plaintiff to the DOT rather than being used by the plaintiff. If the Appellate Court is correct in its conclusion, the plaintiff is exempt from tax because the sales and use tax is not imposed on tangible personal property or services held for resale or subsequently sold to the state of Connecticut. General Statutes §§ 12-410, 12-411, 12-412 (1).

Pursuant to General Statutes (Rev. to 1977) § 12-408 (1), a sales tax is "imposed on all retailers at the rate of seven per cent of the gross receipts of any retailer from the sale of all tangible personal property . . . sold at retail or . . . from . . . [t]he rendering

of any service described in any of the subparagraphs (A) to (M), inclusive, under subdivision (j) of said subsection (2) of section 12-407 . . . ." The terms "sale" and "selling" under these statutes are defined, in pertinent part, to mean and include "(j) the rendering of certain services for a consideration . . ." among which are "(C) . . . agencies providing personnel services" and "(E) . . . patrol work, watchmen and armored car services" and "(k) the leasing or rental of tangible personal property of any kind whatsoever . . . ." General Statutes (Rev. to 1977) § 12-407 (2). Also, General Statutes § 12-411 (1) imposes a use tax on the "storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state or the acceptance or receipt of any services constituting a sale . . . ." The liability for this use tax is on "[e]very person storing, accepting, consuming or otherwise using in this state services or tangible personal property purchased from a retailer . . . ." General Statutes § 12-411 (2).

The difference between a sales and a use tax is that generally a sales tax is imposed on items acquired within the state and a use tax is imposed on items acquired outside the state for use within this state. *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 600, 362 A.2d 847 (1975). Although the record does not disclose the source of the services and property acquired by the plaintiff, on the stipulated facts it is not necessary to distinguish between a sales and a use tax in order to determine the plaintiff's tax liability.

Under General Statutes § 12-411 (9),[3] it is presumed, for the purposes of the use tax, that any tangible per-

---

[3] General Statutes § 12-411 (9) provides: "(9) PRESUMPTION OF PURCHASE FOR USE; RESALE CERTIFICATE. For the purpose of the proper administration of this chapter and to prevent evasion of the use tax and the duty to collect the use tax, it shall be presumed that services or tangible personal

sonal property or service sold for delivery in this state is for use in this state and therefore subject to tax unless the person making the sale proves the contrary. There is also a presumption, for the purpose of the sales tax, that all gross receipts are subject to the tax until the contrary is established. General Statutes § 12-410 (1). The seller is relieved of his burden of proving nontaxability in either instance if the purchaser gives him a certificate that the service or tangible personal property is held for resale. General Statutes §§ 12-411 (9), (10), 12-410 (1), (2). It is clear that the plaintiff held a valid sales and use tax permit under § 12-409 and was authorized to issue resale certificates. General Statutes §§ 12-410 (2), 12-411 (10).

The plaintiff claims that it is exempt from the sales and use tax because the services of the watchmen, trafficmen and flagmen were purchased and the highway flashers were rented with the intent to resell them to the state, as evidenced by the issuance of the resale certificates, and were, in fact, resold to the state, a tax exempt entity. Under General Statutes §§ 12-411 (12) and 12-410 (4), however, a purchaser who gives a resale certificate is subject to a tax if he makes any use of the service or property "other than retention, demonstration or display while holding it for sale in the regular course of business." Therefore, if the plaintiff used the services or property rather than reselling them to the state, the plaintiff would be liable for the use or sales tax. The basic issue addressed by the Appellate Court was whether the items involved became, under the contracts between the parties, contracts for services or contracts to sell the items to the state.

property sold by any person for delivery in this state is sold for storage, acceptance, consumption or other use in this state until the contrary is established. The burden of proving the contrary is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale."

Generally, taxing statutes are strictly construed. *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 571, 440 A.2d 767 (1981); *Naylor* v. *Brown,* 166 Conn. 581, 587, 353 A.2d 709 (1974). "Any statute creating a tax exemption must likewise be strictly construed against the party claiming an exemption." *Caldor, Inc.* v. *Heffernan,* supra; see *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 677, 427 A.2d 863 (1980); *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 71, 363 A.2d 1045 (1976). Therefore, in the present case we must strictly construe this sale for resale exemption against the plaintiff. The law allows the plaintiff to use this exemption only if the services and rentals were clearly for resale rather than being "used" by the plaintiff.

We do not agree with the Appellate Court that the degree of control given the DOT by contract over the services and rentals in question supports a determination that those services and rentals were resold by the plaintiff to the state. Although the DOT did exercise a substantial degree of control over the deployment of those services and rentals, the purpose of retaining such control was to ensure the safety of the public. The commissioner of transportation by statute has the duty of maintaining the safety of the highways. See General Statutes §§ 13a-110, 13a-116, 13a-144. The commissioner of transportation, in order to fulfill his statutory obligation, required the plaintiff to have safety personnel and warning devices and exercised control over those services and devices in order to ensure the safety of the public while the plaintiff was engaged in the construction of highways and bridges. This control, however, is not the major factor in the determination of whether there was a resale to the state. The fact that the DOT exercised control over the manner in which certain services and rentals were to be used by the

plaintiff in the execution of its construction contracts does not make the state a purchaser of those services and rentals.

The court must look to the intention of the parties to the contract to determine whether the items in a contract are held for resale or were purchased for a different purpose. *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 537–38, 107 A.2d 398 (1954). This court held in *Fusco-Amatruda Co.* v. *Tax Commissioner,* supra, 601, that a contractor who purchased materials for the construction of a building had used the materials. That conclusion was reached because the contractor was "not in the business of selling materials. He [was] in the business of using them to build houses. . . ." Id., quoting *G. S. Lyon & Sons Lumber & Mfg. Co.* v. *Department of Revenue,* 23 Ill. 2d 180, 185, 177 N.E.2d 316 (1961). The plaintiff in the present case is in the business of constructing highways and bridges rather than in the business of reselling the services of watchmen, flagmen and trafficmen or flasher rentals. The services and rentals were used by the plaintiff, as were the materials in *Fusco-Amatruda Co.,* because they were a necessary part of the process of constructing the bridges and highways. Even if the contract had not required that the plaintiff obtain these services and rentals, the plaintiff would have had to obtain similar services and rentals in order to ensure the safety of the public during the process of construction. Under these circumstances, therefore, the intention of the parties was for the plaintiff to use the services and rentals in the construction process rather than to resell them to the DOT.

Where the transaction is only incidental to a service performed for the purchaser, it is not considered a sale for tax purposes. *United Aircraft Corporation* v. *O'Connor,* supra, 539. In the present situation, the services and rentals provided by the plaintiff to the DOT

under the contracts were merely incidental to the plaintiff's primary business of constructing highways and bridges. Under its various contracts for the construction of highways and bridges, the plaintiff was obligated to provide the personnel and warning devices for safety and security purposes. The plaintiff provided them even though their cost to the plaintiff was greater than the amount it charged the DOT pursuant to those contracts. The plaintiff's sole purpose in providing those items was to obtain and perform contracts to build highways and bridges. The plaintiff was not in the business of providing security services or warning devices. Those items were simply necessary for the plaintiff to fulfill the terms of its construction contracts.

We conclude, therefore, that the services and rentals in question were incidental to the plaintiff's performance of the construction contracts. The plaintiff did not hold them for resale. Even though the DOT exercised control over the services and rentals in question, the intent of the parties and the incidental nature of the services and rentals compels a conclusion that the plaintiff "used" them to fulfill its contracts. Thus, when we strictly construe the exemption contained in that statute, the plaintiff does not qualify for the sale for resale exemption. The Appellate Court's conclusion, therefore, that the plaintiff was exempt from the sales and use tax because it resold the services and rentals to the state was incorrect. See General Statutes §§ 12-411 (12), 12-410 (4).

The judgment of the Appellate Court is reversed, and the case is remanded with direction that the judgment of the trial court is to be set aside with judgment to be directed in favor of the defendant.

In this opinion the other judges concurred.