UNITED TECHNOLOGIES CORPORATION *v.* JOHN G.
GROPPO, COMMISSIONER OF
REVENUE SERVICES

NORDEN SYSTEMS, INC. *v.* JOHN G. GROPPO,
COMMISSIONER OF REVENUE SERVICES
(15354)

Callahan, Berdon, Norcott, Katz and Palmer, Js.

Argued May 2—officially released August 13, 1996

*Charles H. Lenore*, with whom were *Thomas E. Bartell* and, on the brief, *J. Danford Anthony, Jr.*, for the appellants (plaintiffs).

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

CALLAHAN, J. The issue in this appeal is whether the plaintiffs, United Technologies Corporation and Norden Systems, Inc., are liable for sales and use taxes assessed by the defendant, the commissioner of revenue services (commissioner), for the period from July 1, 1981, through June 30, 1985. The plaintiffs claim that the purchase and use of the property and services in question are not subject to the Connecticut sales and use taxes pursuant to either General Statutes (Rev. to 1981) § 12-412[1] as a sale to the United States or pursuant to

---

[1] General Statutes (Rev. to 1981) § 12-412 provides in relevant part: "Exemptions. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items:

"(a) The United States, the state or subdivisions. Sales of tangible personal property or services to the United States, the state of Connecticut or any of the political subdivisions thereof, or its or their respective agencies. . . ."

General Statutes (Rev. to 1981) § 12-407 (3)[2] as a sale for resale. The commissioner determined that the plaintiffs were not relieved from sales and use tax liability under either section. Pursuant to General Statutes (Rev. to 1981) §§ 12-408 and 12-411,[3] he therefore levied substantial assessments against the plaintiffs for their purchase and subsequent use of tangible personal property and services in fulfillment of certain United States government contracts.

The plaintiffs filed a petition for reassessment with the commissioner, pursuant to General Statutes (Rev. to 1981) § 12-418.[4] In response to the plaintiffs' petition,

Because the audit period began in 1981, in this opinion we quote the General Statutes as revised to 1981 even though the relevant statutes have been amended since that time primarily with respect to the tax rates.

[2] General Statutes (Rev. to 1981) § 12-407 (3) provides in relevant part: " 'Retail sale' or 'sale at retail' means and includes a sale for any purpose other than resale in the regular course of business of tangible personal property or a transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house for a period of thirty consecutive calendar days or less, or the rendering of any service described in any of the subdivisions of subsection (2) of this section. . . ."

[3] General Statutes (Rev. to 1981) § 12-408 provides in relevant part: "The sales tax. (1) Imposition and rate of sales tax. For the privilege of making any sales as defined in subsection (2) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of seven and one-half per cent of the gross receipts of any retailer from the sale of all tangible personal property, except as hereinafter provided, sold at retail or . . . in lieu of said rate of seven and one-half per cent, at the rate of three and one-half per cent of the gross receipts of any retailer from the rendering of any service described in subdivision (i) of said subsection (2) of section 12-407. . . ."

General Statutes (Rev. to 1981) § 12-411 provides in relevant part: "The use tax. (1) Imposition and rate. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state at the rate of seven and one-half per cent of the sales price of the property, and in lieu of said rate of seven and one-half per cent at the rate of three and one-half per cent with respect to the rendering of any service described in subdivision (i) of subsection (2) of section 12-407. . . ."

[4] General Statutes (Rev. to 1981) § 12-418 provides in relevant part: "Reassessments. (1) Petition for reassessment. Any person against whom an

the commissioner determined that there was no basis for a revision of the assessment. The plaintiffs appealed the commissioner's decision to the Tax Session of the Superior Court pursuant to General Statutes (Rev. to 1981) § 12-422.[5] In a memorandum of decision dated May 19, 1995, the Superior Court agreed with the commissioner and concluded that the plaintiffs were the purchasers and consumers of the tangible personal property and services involved and therefore found them liable for the sales and use taxes assessed. The case was remanded, however, for a determination of which portions of the assessment involved design or engineering services not enumerated as taxable under § 12-407 (2) (i). Thereafter, the parties stipulated as to this determination, the remand was withdrawn and the court rendered judgments for the defendant, from which the plaintiffs filed a joint appeal to the Appellate Court. We transferred their appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We sustain the judgment of the trial court in part and reverse in part.

The question of the plaintiffs' sales and use tax liability arises out of circumstances described in a stipulation of facts entered into by the parties and the uncontroverted testimony of Curtis M. Zimmer, the sole witness at trial. The undisputed facts reveal that the plaintiffs

assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within thirty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the thirty-day period, the assessment becomes final at the expiration of the period. . . ."

[5] General Statutes (Rev. to 1981) § 12-422 provides in relevant part: "Appeal. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. . . ."

entered into cost-plus contracts[6] with various constituent parts of the United States government. In performance of these government contracts, the plaintiffs purchased tangible personal property and services from a number of vendors. Due to the government's involvement in the contracts, the plaintiffs were required to comply with various government regulations pertaining to government owned property,[7] as were the vendors.[8]

Under the terms of the contracts, and in accordance with the applicable government regulations, title to any property purchased to fulfill the government contracts vested immediately in the United States.[9] Provisions in the government contracts pertaining to use and control of the property purchased to perform the contracts included the following: (1) the use of the property by the plaintiffs was limited to performance of the government contracts; (2) the plaintiffs were accountable and responsible to the United States for all property pur-

---

[6] Cost-plus contracts, in general, involve a payment scheme whereby payment, in part, is a reimbursement for allowable costs.

[7] Defense Acquisition Regs. ¶ 7-203.21, 32 C.F.R. c. 1 (1984); National Aeronautics and Space Administration Regs. ¶ 13.703, 41 C.F.R. c. 18 (1984); Federal Acquisition Regs. § 52.245-5, 48 C.F.R. c. 1 (1995).

[8] At trial, Zimmer testified that many provisions within the government regulations also required compliance by the subcontractors, and that the burdens of compliance could be so great that at times, subcontractors would choose to avoid government jobs because of the regulations.

[9] The specific provisions in the various regulations relevant to title are similar. Section 52.245-5 of the Federal Acquisition Regulations provides in relevant part: "Title. (1) The Government shall retain title to all Government-furnished property. (2) Title to all property purchased by the Contractor for which the Contractor is entitled to be reimbursed as a direct item of cost under this contract shall pass to and vest in the Government upon the vendor's delivery of such property. (3) Title to all other property, the cost of which is reimbursable to the Contractor, shall pass to and vest in the Government upon—(i) Issuance of the property for use in contract performance; (ii) Commencement of processing of the property or use in contract performance; or (iii) Reimbursement of the cost of the property by the Government, whichever occurs first. . . ." In the present case, the commissioner conceded that title to all tangible personal property in question vested immediately in the United States and was never held by the plaintiffs.

chased; (3) the United States had access to the property at all reasonable times; (4) the plaintiffs were not generally liable for loss or destruction of or damage to the property and were not required to insure it against loss; and (5) upon completion of the government contracts, the plaintiffs were required to dispose of the property acquired as directed by the United States. In addition, the United States was responsible for delivery charges and shipping costs of all tangible personal property purchased from vendors. Throughout the performance of the government contracts, the plaintiffs were required to comply with the government regulations concerning government owned property. Additionally, the plaintiffs used the property only for government purposes and never made a claim to ownership of such property.

Also pursuant to the government contracts, the plaintiffs purchased testing, personnel, computer and data processing, stenographic, design, and engineering services. Performance of these services varied as to their location. Some vendors came on the plaintiffs' sites to perform their work, while others performed services off-site.

Prior to April 2, 1986, the commissioner conducted a sales and use tax audit of the plaintiffs for the period from July 1, 1981, through June 30, 1985, and subsequently issued an assessment against the plaintiffs totaling $2,200,237.25: approximately $840,833 was based on purchases of tangible personal property, and the remaining $1,359,404 was based on the purchase of services, 65 percent for on-site services and 35 percent for off-site services. In a subsequent stipulation by the parties,[10] the parties agreed upon an adjusted assessment that excluded those amounts attributable to

---

[10] The stipulation was entered into after the rendering of judgment and remand by the trial court.

design and engineering services, as those services were not services enumerated in § 12-407 (2) (i) as subject to the sales and use tax, and therefore were not taxable.[11] It is this amended assessment from which the plaintiffs appeal.

We first note that we are reviewing the legal conclusion of the trial court that the plaintiffs were the purchasers and consumers of the tangible personal property and services for purposes of the sales and use tax. Our standard of review for the legal conclusion of a trial court is well established. " 'The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).' " *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996).

To address the trial court's legal conclusion, we must consider three specific issues: (1) whether *United States* v. *New Mexico*, 455 U.S. 720, 102 S. Ct. 1373, 71 L. Ed. 2d 580 (1982), effectively overruled this court's decision in *Avco Mfg. Corp.* v. *Connelly*, 145 Conn. 161, 140 A.2d 479 (1958) (*Avco*); and, if not, (2) what is the proper application of *Avco* in determining whether the plaintiffs were the purchasers and consumers of the tangible personal property in question; and, further, (3)

---

[11] The adjusted total assessment against the plaintiffs is roughly $1,419,341.

what is the proper application of *Avco* in determining whether the plaintiffs were the purchasers and consumers of provided services.

I

The first issue to be considered is whether the 1982 United States Supreme Court decision in *New Mexico* effectively overruled our 1958 decision in *Avco*. In *New Mexico*, the United States Supreme Court rendered a decision which expressed the federal immunity standard as follows: "[T]ax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *United States* v. *New Mexico*, supra, 455 U.S. 735. The facts in *New Mexico* involved three contractors in contractual relationships with the United States government and New Mexico's levy of a gross receipts tax on the contractors. On appeal, the contractors claimed immunity from the gross receipts tax. The contractors claimed that due to their close contractual relationship with the United States government, they should benefit from the federal government's immunity from state taxation under the supremacy clause of article six of the United States constitution. After analyzing the contractual relationship between the contractors and the government and finding that the contractors were separate entities for the purposes of the activity under contract, the court refused to extend them federal immunity.

The department of revenue services for the state of Connecticut, in a letter to the plaintiff dated June 21, 1982,[12] stated that due to the United States Supreme

---

[12] This letter was reprinted in the Connecticut Tax Reporter published by Commerce Clearing House. State Tax Rep. (Conn.) (CCH) ¶ 200-214 (June 21, 1982).

Court decision in *New Mexico*, all sales of tangible personal property and services to government contractors made pursuant to government contracts, except for specifically exempted property, would be subject to the sales and use tax as of July 1, 1982.[13] The commissioner adopted the position that the decision in *New Mexico* overruled this court's decision in *Avco*, and that government contractors would now be subject to Connecticut sales and use taxes regardless of whether title to the property passed directly from the vendor to the United States.

Our analysis in *Avco* focused on the issue of who was the purchaser and consumer of the tangible personal property in question. In *Avco*, the United States government contracted with Avco Manufacturing Corporation (Avco) for, among other things, the purchase and installation of new facilities and equipment, such as machinery, in a government owned plant. The facilities were used by Avco for the production of airplane engines and engine parts. The United States, however, supervised the purchase, use and maintenance of these facilities. *Avco*, supra, 145 Conn. 164. In addition, title to all property purchased pursuant to the contracts vested immediately with the United States even though Avco paid each vendor for the facilities and equipment purchased and was subsequently reimbursed for the purchase by the United States. Id., 165.

The commissioner levied a sales and use tax assessment against Avco for the purchase of the machinery and other personal property to be utilized in the government owned plant. Avco claimed an exemption from the sales and use tax under General Statutes (1949 Rev.) § 2096 (a) because it claimed the sales were to the

---

[13] Since *Avco*, supra, 145 Conn. 161, the commissioner had not attempted to levy the sales and use taxes on purchases of property and taxable services made in the name of the United States to fulfill government contracts.

United States.[14] This court looked to the definition of a "sale" in General Statutes (1949 Rev.) § 2091 (3)[15] and determined that "the party to whom title is transferred is the party to whom the sale is made, regardless of the fact that another party participates in the transaction by sending a purchase order to the vendor and by paying the vendor's invoices under a contractual relationship providing for the reimbursement of that party by the purchaser." *Avco*, supra, 145 Conn. 169. Applying this reasoning to the facts in *Avco*, we concluded that the United States was the purchaser of the facilities and equipment, and, therefore, that the transactions were sales to the United States and exempt from state taxation.

With respect to the use tax, we determined in *Avco* that ownership was also integral to use tax liability. Taxable use was defined in § 2091 (6)[16] as "the exercise of any right or power over tangible personal property incident to the ownership of that property . . . ." We stated in *Avco* that "[i]t seems clear that storage and consumption, as well as use, must be incident to owner-ship for the use tax to apply." *Avco*, supra, 145 Conn. 173. Due to the emphasis on ownership in our sales and use tax statutes, we concluded that the party who receives title to tangible personal property is the pur-chaser for purposes of the sales tax, and that the party with title is liable for the use tax when the article is utilized or consumed. The identical reasoning was used

[14] General Statutes (1949 Rev.) § 2096 (a), the predecessor to General Statutes § 12-412 (1), provides in relevant part that the tax shall not apply to "[s]ales of tangible personal property to the United States . . . or its . . . respective agencies."

[15] General Statutes (1949 Rev.) § 2091 (3), the predecessor to General Statutes § 12-407 (2), defined "sale" as meaning and including "[a]ny transfer of title, exchange, barter, conditional or otherwise, in any manner or any means whatsoever, of tangible personal property for a consideration . . . ."

[16] General Statutes (1949 Rev.) § 2091 (6) was the predecessor to General Statutes § 12-407 (5).

in *United Aircraft Corp.* v. *Connelly,* 145 Conn. 176, 140 A.2d 486 (1958), the companion case to *Avco.*

In *Avco,* this court's task was to determine the actual purchaser of tangible personal property in order to fix tax liability on the proper party. On the other hand, in *New Mexico,* the United States Supreme Court determined and clarified the proper application and scope of federal immunity from state taxation on an entity that was conceded to be the purchaser and consumer. The test set out in *New Mexico,* therefore, is not a test that is used to ascertain where the tax liability falls; rather, it is used to ascertain whether the entities that *are* responsible for the tax are entitled to federal immunity from the tax. By definition, the analysis employed in *New Mexico* must take place subsequent to a determination of who is responsible. It is only after the tax liability attaches that the *New Mexico* test is used to determine whether federal immunity applies, either directly, if the United States is the taxable entity, or by affiliation, if the government and the government contractor cannot realistically be viewed as separate entities. The court in *New Mexico* acknowledged the progression of this analysis: "The Government concedes that the legal incidence of the gross receipts and use taxes falls on the contractors . . . and we do not disagree. See *United States* v. *New Mexico,* 581 F.2d 803, 806 ([10th Cir.] 1978). The issue, *then,* is whether the contractors can realistically be considered entities independent of the United States." (Emphasis added.) *United States* v. *New Mexico,* supra, 455 U.S. 738. Specifically *not* in issue before the United States Supreme Court in *New Mexico* was a determination of who was legally responsible for the tax. It was only because the contractors had been identified as being legally responsible for the tax that the *New Mexico* court considered the relationship between the contractors and the government. Had it been determined that the New Mexico

gross receipts tax legally fell upon the United States government, immunity from state taxation would have been triggered automatically and the contractors' relationship to the government would have been irrelevant.

Conversely, it is clear that the *Avco* decision concerns itself only with the initial inquiry in assessing tax liability, that is, upon whom does the levy fall? It is only after that legal question is answered that the question of whether the responsible entity has federal immunity can be answered. The latter, not the former, is the question answered by *New Mexico*. In other words, *New Mexico* only defined the parameters in which federal immunity operates, it did not decide who was responsible for the tax, as did *Avco*. We conclude, therefore, that the United States Supreme Court decision in *New Mexico* did not overrule or otherwise affect our decision in *Avco*.

## II

The second question we must address, then, is the proper application of *Avco* to the purchase of the tangible personal property in question. It is undisputed that the legal incidence of the Connecticut sales tax falls upon the purchaser.[17] In light of *Avco*, we must therefore decide, in order to determine the purchaser for sales tax purposes, who took title to the tangible personal property purchased from vendors pursuant to the plaintiffs' contracts with the United States. The intent of the parties is ascertained from the language used, interpre-

---

[17] *Avco Mfg. Corp.* v. *Connelly*, supra, 145 Conn. 171 ("[i]t is clear, however, under the decisions of the United States Supreme Court in *Kern-Limerick, Inc.* v. *Scurlock*, 347 U.S. 110, 74 S. Ct. 403, 98 L. Ed. 546 [1954], and *Alabama* v. *King & Boozer*, 314 U.S. 1, 62 S. Ct. 43, 86 L. Ed. 3 [1941], that a sales tax imposed upon a vendor who, in turn, is required to collect the tax from the purchaser is a tax upon the purchaser"); see *United States* v. *Tax Commissioner of Mississippi*, 421 U.S. 599, 608, 95 S. Ct. 1872, 44 L. Ed. 2d 404 (1975); *First Agricultural National Bank* v. *Tax Commissioner of Massachusetts*, 392 U.S. 339, 347, 88 S. Ct. 2173, 20 L. Ed. 2d 1138 (1968).

ted in light of the situation of the parties and the circumstances surrounding them. *Lar-Rob Bus Corp.* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976); *Ginsberg* v. *Mascia,* 149 Conn. 502, 506, 182 A.2d 4 (1962); *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604 (1957); *United Aircraft Corp.* v. *O'Connor,* 141 Conn. 530, 538, 107 A.2d 398 (1954).

The following undisputed facts lead us to conclude that it was the United States government that took title to the tangible personal property upon its purchase from the vendors: the government contracts provided that title vest in the United States; the government paid the transportation costs of the tangible personal property to the plaintiffs' facilities; the government generally bore the risk of loss, destruction and damage to the tangible personal property; and the government had the right to final disposition of any remaining property. In addition, the plaintiffs contractually were required to comply with government regulations concerning the handling of government property. In light of the language of the contracts and their various provisions, it was clearly the parties' intent that the government take immediate title to all tangible personal property purchased from vendors to fulfill the plaintiffs' contracts with the United States. Therefore, we conclude that the plaintiffs' are exempt from sales and use taxes levied on the purchase and consumption of the tangible personal property.

### III

The final issue is the proper application of *Avco* to the plaintiffs' purchase of various services used to fulfill its contracts with the United States. It is undisputed that the services secured are services enumerated in § 12-407 (2) (i), and therefore, at first blush, subject to the sales and use taxes. The plaintiffs, however, claim an exemption, arguing that the commissioner has acqui-

esced in the nontaxability of services obtained to enable the plaintiffs' to complete their contracts with the United States. More specifically, the plaintiffs' contend that because the commissioner has treated tangible personal property and services identically since our decision in *Avco* in 1958, services should continue to be exempt from taxation if *New Mexico* did not affect our holding in *Avco*. We disagree.

Our holding in *Avco* concerned only the purchase and use of tangible personal property in fulfilling government contracts; it did not address the purchase and consumption of services. In fact, *Avco* could not have addressed that question because services were not subject to Connecticut's sales and use taxes until 1975.[18] In *Avco*, we focused on title to tangible personal property because of the emphasis on ownership in the sales tax statutes, but ownership of tangible personal property has no application to an analysis of taxability of the purchase of services. In sum, the decision in *Avco* was narrowly directed toward the purchase and ownership of tangible personal property and is therefore inapplicable to the purchase of services.

Regardless of *Avco's* inapplicability to services, we must nevertheless address the § 12-412 (a) exemption for sales to the United States in the context of services. In other words, we must consider whether, *Avco* aside, the United States was the purchaser of the services used by the plaintiffs to fulfill their contracts. We think not. Whereas the statutes concerning tangible personal property focus on ownership as the touchstone of taxability, the statutes concerning services focus on acceptance and receipt,[19] and there is little doubt that the plaintiffs accepted and received the services in ques-

---

[18] Public Acts 1975, No. 75-213, first imposed the sales and use taxes on certain enumerated services.

[19] See General Statutes (Rev. to 1981) §§ 12-407 (7) (e) and 12-411 (1).

tion. Even though the United States exercised some control with respect to the services purchased to fulfill the plaintiffs' government contracts, the plaintiffs clearly were the purchasers and consumers of the services. See *American Totalisator Systems, Inc.* v. *Dubno*, 210 Conn. 413, 555 A.2d 421 (1989).

The plaintiffs contend, however, that even if they are deemed to be the purchasers of the services, their purchases were actually purchases for resale, and therefore no tax is due the state on the transactions pursuant to § 12-407 (3).[20] Our case law concerning sales for resale is clear.[21] The court must look to the intention of the parties to the contract to determine whether the items in a contract are held for resale or were purchased for a different purpose. *White Oak Corp.* v. *Dept. of Revenue Services*, 198 Conn. 413, 422, 503 A.2d 582 (1986). That intention is to be ascertained from the language used, interpreted in the light of the situation of the parties and the circumstances surrounding them. *United Aircraft Corp.* v. *O'Connor*, supra, 141 Conn. 538. Where the transaction is only incidental to a service performed for the purchaser, it is not considered a resale for tax purposes. Id., 539.

In *American Totalisator Systems, Inc.* v. *Dubno*, supra, 210 Conn. 413, American Totalisator Company (AmTote) contracted with the state to establish and operate the state's teletrack and off-track betting systems. AmTote, however, used employees of its sister corporation, American Totalisator Systems, Inc. (Systems), the plaintiff and taxpayer, to fulfill its contracts with the state because AmTote itself did not employ sufficient personnel to do so. The commissioner assessed a sales tax on Systems for the sale of their

---

[20] See footnote 2.

[21] When the sales and use taxes against the plaintiffs were assessed, tangible personal property and services were treated identically under our case law with respect to sales for resale. But see General Statutes § 12-411 (14).

employees' services to AmTote. Systems contested the imposition of the tax. We determined that Systems was liable for the sales tax, concluding that "the sales of Systems' employees' services to AmTote were not sales for resale but rather retail sales subject to the imposition of a sales tax." Id., 417. We also concluded that "the intention of both the state and AmTote, as manifested by their contracts, was that AmTote provide the state with equipment and personnel to establish and operate the state's embryonic wagering systems. The agreements clearly indicate that the state did not contract with AmTote to purchase personnel services per se." Id., 417–18.

In *White Oak Corp.* v. *Dept. of Revenue Services*, supra, 198 Conn. 415, the plaintiff taxpayer entered into a contract with the state to construct various highways and bridges throughout the state. Under the terms of the contracts, the taxpayer was obligated to provide watchmen, trafficmen and flagmen at each location, as well as to rent highway flashers to be placed along the roadside. We determined that the taxpayer was liable for a sales and use tax on those items, concluding that "the services and rentals in question were incidental to the [taxpayer's] performance of the construction contracts . . . [and, therefore,] the [taxpayer] 'used' them to fulfill its contracts." Id., 423.

In *Fusco-Amatruda Co.* v. *Tax Commissioner*, 168 Conn. 597, 600–601, 362 A.2d 847 (1975), we determined that purchases of construction materials by the plaintiff general contractor who was obligated to build an apartment complex for a charitable organization were subject to a use tax, despite the exemption from use tax liability provided the charitable organization pursuant to then § 12-412 (h), now § 12-412 (8). We concluded that the general contractor had procured the materials not as the agent of the charity, but to satisfy its own obligation to build the apartment complex and, there-

fore, the contractor, rather than the charitable organization, was the consumer of the materials used and was subject to use tax liability. Id. Although *Fusco-Amatruda Co.* pertained to tangible personal property, the same reasoning applies to the services enumerated in § 12-407 (2) (i) in this instance.

In the present case, it is evident from the record that the United States contracted with the plaintiffs to procure the development of a fuel cell, not to purchase the personnel services required for the production of a fuel cell. As written in § B.1 of Contract DAAK70-80-C-0041, "[t]he Contractor shall furnish all personnel, engineering, labor . . . and services necessary to design, fabricate, test and deliver methanol fuel cell power units . . . ." This language clearly differentiates between those items that were the responsibility of the contractor and the desired result that was the ultimate goal of the contract—the development of a methanol fuel cell power unit.

In summary, we conclude that the nature of the contracts and the language of the agreements between the plaintiffs and the government compel a determination that the services the plaintiffs purchased, although not inconsequential in utility or cost, were incidental to the primary purpose of the government contracts, i.e., the development of a fuel cell, and were utilized by the plaintiffs to fulfill the primary purpose of the contracts; therefore, the plaintiffs, rather than the government, were the consumers of the services used. Consequently, the purchase and subsequent sale of services by the plaintiffs was a "retail sale" as defined by § 12-407 (3) and not a sale for resale. We concur, therefore, in the trial court's conclusion that the plaintiffs were liable for the sales and use tax assessment on their purchase and utilization of enumerated services to fulfill their contracts with the United States. We conclude, however, that the trial court incorrectly concluded that the

plaintiffs were liable for sales and use taxes for the purchase and use of tangible personal property, title to which was taken in the name of the United States.

The judgment is reversed in part and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.